OPINION
{¶ 1} Appellant, Harry L. Story, Sr. ("Mr. Story"), appeals from the Ashtabula Court of Common Pleas' denial of his motion to withdraw his guilty plea. For the reasons that follow, we affirm.
 {¶ 2} Substantive Facts and Procedural History
 {¶ 3} On August 4, 2006, the Ashtabula County Grand Jury returned an indictment charging Mr. Story with escape, a third degree felony in violation of R.C. 2921.34, and vandalism, a fifth degree felony in violation of R.C. 2909.05. These *Page 2 
charges arose after Mr. Story, who was being held on a parole violation and awaiting transport back to prison, and another individual attempted to escape from jail by breaking a window and crawling out of it. The plan was foiled when officers caught Mr. Story's alleged accomplice halfway through the broken window. At the time the officers arrived, Mr. Story was still standing in the jail cell and had not yet attempted to crawl through the broken window. Mr. Story initially pled not guilty to both charges.
 {¶ 4} A jury trial commenced on November 13, 2006. After the jury had been selected, Mr. Story entered into a negotiated plea agreement and entered an Alford plea to both charges in the indictment. The plea was reduced to writing and signed on November 13, 2006 by Mr. Story, defense counsel and the assistant prosecutor. The terms of the written plea were that Mr. Story would withdraw his not guilty pleas as to each count and enter an Alford plea to both. The written plea set forth the maximum penalties that could be imposed for each offense. The written plea did not set forth any sentencing recommendations that were made by the state in exchange for the change of plea.
 {¶ 5} The terms of the plea agreement were put on the record on November 13, 2006. The state indicated that Mr. Story would plead guilty to escape and vandalism. Mr. Story would also agree to plead guilty to "two out of three drug charges" pending in another case and plead guilty to a charge of aggravated assault pending in a separate case. Based upon those conditions, the prosecutor agreed to recommend a one year sentence on each count, escape and vandalism, to run concurrently. The state also stated that it would recommend nine months on the two drug charges to be served concurrently with the nine months Mr. Story received for the parole violation. The state indicated that there was no agreed sentencing recommendation as to the aggravated *Page 3 
assault charge. The trial court conducted the required Crim.R. 11(C) colloquy before accepting Mr. Story's guilty plea.
 {¶ 6} The trial court continued the sentencing hearing "from day to day" to give the state and the defense time to "work out" the other pending charges. On November 17, 2006, the trial court conducted a sentencing hearing. At the commencement of the hearing, Mr. Story's counsel informed the court that Mr. Story wished to withdraw his plea. The trial court denied Mr. Story's motion to withdraw his plea and proceeded to sentencing. Mr. Story was sentenced to a three year prison term on the escape conviction and a one year prison term on the vandalism conviction, to be served concurrently with each other, but consecutively to the sentence Mr. Story was already serving for a post-release control violation in another case.
 {¶ 7} Mr. Story appeals the trial court's denial of his motion to withdraw his guilty plea and sets forth three assignments of error for this court to consider:
 {¶ 8} "[1.] The trial court erred when it summarily overruled Mr. Story's preseetence [sic] motion to vacate plea without a hearing or careful consideration of defendant's concerns.
 {¶ 9} "[2.] The sentence of the lower court should be reversed on the basis of prosecutorial misconduct in not following the terms of the plea agreement and/or the plea and sentencing should be reversed because the plea was entered into upon false promises in violation of Criminal Rule 11.
 {¶ 10} "[3.] Appellant was prejudiced by the ineffective assistance of trial counsel."
 {¶ 11} Withdrawal of Guilty Plea *Page 4 
 {¶ 12} In his first assignment of error, Mr. Story contends that the trial court erred by not allowing him to withdraw his guilty plea. Specifically, Mr. Story argues that the trial court failed to provide him with a hearing regarding his motion to withdraw his guilty plea and the trial court failed to give careful consideration to the motion.
 {¶ 13} Crim.R. 32.1 governs the withdrawal of a guilty plea and provides:
 {¶ 14} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 15} We apply an abuse of discretion standard in determining whether a trial court was warranted in denying a motion to withdraw a guilty plea. State v. Xie (1992), 62 Ohio St.3d 521, at paragraph two of the syllabus. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 16} "In determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea, we begin our analysis with the understanding that `[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing.'" State v.Haney, 11th Dist. No. 2006-L-253, 2007-Ohio-3712, at ¶ 11, citingXie, at paragraph one of the syllabus. "We then consider the following four factors set forth in State v. Peterseim (1980), 68 Ohio App.2d 211: "(1) did the trial court follow Crim.R. 11 and ensure the defendant understood his rights and voluntarily waived those rights by pleading guilty; (2) was the defendant represented by highly competent counsel; (3) was the defendant given a hearing wherein he could assert all arguments supporting his *Page 5 
motion to withdraw the plea; and (4) did the trial court give careful consideration to the merits of the defendant's motion?" Id., citingState v. Bailey, 11th Dist. No. 2004-P-0086, 2005-Ohio-6900, at ¶ 26;State v. Patt, 11th Dist. No. 2002-L-073, 2004-Ohio-2601, at ¶ 10.
 {¶ 17} "The primary factor this court considers] in determining whether a trial court abused its discretion in denying a defendant's motion to withdraw a guilty plea [i]s whether the defendant was given an adequate hearing on his motion to withdraw his plea and was afforded the opportunity to make all arguments in support of his motion." State v.Green (Oct. 24, 1997), 11th Dist. No. 96-T-5418, 1997 Ohio App. LEXIS 4732, at 4 citing State v. Green (Oct. 27, 1995), 11th Dist. No. 94-T-5103, 1995 Ohio App. LEXIS 4768, at 5-6.
 {¶ 18} In this context, this court has held that the term "hearing" connotes an oral proceeding wherein the defendant is given a full opportunity to present arguments on his or her behalf. State v.Pachay (Dec. 15, 1995), 11th Dist. No. 95-L-096, 1995 Ohio App. LEXIS 5562, at *5-6 quoting State v. Haney (Sept. 8, 1995), 11th Dist. No. 95-L-001, 1995 Ohio App. LEXIS 3914, at 4-6. See, also, State v.Wright (June 19, 1995), 4th Dist. No. 94-CA-853, 1995 Ohio App. LEXIS 2963, at 16 (hearing on a presentence motion to withdraw must comply with the minimum requirements of due process, including a meaningful opportunity to be heard.) Simply put, "the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea * * * [and must consider] all the circumstances surrounding the entering of the plea." Xie at 527.
 {¶ 19} The transcript of Mr. Story's sentencing hearing reveals that initially, prior to listening to counsel and to Mr. Story, the trial court stated that it was going to overrule *Page 6 
Mr. Story's motion to withdraw his guilty plea. Mr. Story contends that under these circumstances, he was deprived a full hearing. At first glance, if taken out of context, it could arguably appear that this conclusory remark deprived Mr. Story a full hearing on his motion. However, upon closer review, we find that the trial court did in fact provide Mr. Story with the hearing and consideration required byXie and Peterseim.
 {¶ 20} The record demonstrates that after making this remark, the trial court restated the terms of the plea agreement and the circumstances underlying the agreement, which defense counsel confirmed. The prosecutor and Mr. Story were then permitted to address the court. The prosecutor summarized the allegations against Mr. Story and recommended that Mr. Story be sentenced to five years on the escape charge and one year on the vandalism charge, to be served consecutively. Not only did the prosecutor state his position, but the court gave Mr. Story the full opportunity to be heard and to explain the reasons why he felt there was a legitimate basis for the withdrawal of his plea.
 {¶ 21} Specifically, the following colloquy took place between the trial court and Mr. Story:
 {¶ 22} "The Court: All right, Mr. Story, you're not required to make any statement at all, but the law does give you a right to make a statement, if there is anything you wish to say personally before I impose sentence.
 {¶ 23} "Mr. Story: Yes.
 {¶ 24} "The Court: You want to go ahead.
 {¶ 25} "Mr. Story: Yes. Why I want to withdraw my plea because I wasn't involved in it, and I didn't plan to try to escape from there. I have been brought back the *Page 7 
24th and it happened on the 29th and my parole violation is up November 19th, which is Sunday. I wouldn't want to try to escape, okay.
 {¶ 26} "I should have took [sic] it to trial because the statements that were made and everything were false. I was implicated in it. I didn't have no [sic] cuts on me. I didn't see no [sic] doctor. Dionoff went to see the doctor. He had to have four stitches. There is no way I could have went [sic] through the window. I'm 224 pounds and the window is only 11 inches wide. Matthew Dionoff went through the window, was outside of the window, four feet from the ground, okay, and I didn't have nothing [sic] to do with it, okay.
 {¶ 27} "Now my understanding on the plea bargain that they were going to throw away the Escape and I plead to the Vandalism. I was all for it because I cannot go back to prison with an Escape on my charge. I'll have my — my rating right now is a two. It would raise to a five. I would be in behind a six by nine for the whole five years for Escape. Anywhere you go you will be in, you know, two guards on you. You won't be able to move freely around the prison or nothing, okay.
 {¶ 28} "Now, I admit I was in that room when he escaped but I didn't have nothing to do with it and on the tape, I should have took it to trial because one person that he wanted to use for a witness held the equipment, the tools and the bolt in his cell and gave it to Matthew Dionoff to break out the window with and he was going to use-the prosecution was going to use him for a witness, okay.
 {¶ 29} "And, as far as Mr. Sundquist go, there was some racial statements made by Mr. Sundquist that started the argument, okay. And I told him I was there when the fed guys escaped, okay. I was there on the floor that day. They escaped. I didn't try to escape. Unfortunately, I have a criminal record, but I have never tried to escape. *Page 8 
Never. And I wasn't involved in this escape. I would have took the deal like they offered, the prosecutor offered first, throw out the Escape and plead to the Vandalism.
 {¶ 30} "The Court: Well, I think on the day of trial, the only option that was available was to plead to the Indictment.
 {¶ 31} "Mr. Story: Yeah.
 {¶ 32} "The Court: And the recommendation at that time was going to be that you would receive a one year sentence as part of this overall plea agreement.
 {¶ 33} "Mr. Story: Right.
 {¶ 34} "The Court: But not to throw out the Escape. That was not an option on the day of trial, so . . .
 {¶ 35} "Mr. Story: Yeah. I know, if I go back to prison with Escape on my record, my rating will change, okay. My status will change and everything. Right now I'm a level two. I would go back to, like, North Coast, all right.
 {¶ 36} "Now, with this Escape on my record, I'd have to go to Lucasville under maximum lock down. So I would rather take my chance with a jury because I have-there's enough evidence not to implicate me to the Escape."
 {¶ 37} It is clear from the record that despite the court's initial remark, the court did afford Mr. Story a full hearing on his motion and gave full, fair and careful consideration to Mr. Story's request. Mr. Story was given the opportunity to explain the reasons for his motion, indicating to the trial court that he was innocent as to both charges, consistent with the previously entered Alford plea. Mr. Story also attempted to show that he was confused at the time he entered his guilty plea by stating that his "understanding on the plea bargain that they were going to throw away the escape and I plead to the vandalism." Particularly telling was Mr. Story's additional reason for *Page 9 
withdrawing his plea, i.e. the fact that if he was imprisoned for the escape charge, he believed his prisoner "status" would change and he would be transferred to a maximum lockdown facility.
 {¶ 38} It appears that what transpired in this case is that Mr. Story elected to change his not guilty plea after the jury was impaneled and after he had the benefit of hearing the summary of the state's case against him. Then, after Mr. Story changed his plea, by his own admission he realized that his prisoner status would change based upon his plea. After thinking more about the consequences of this action, Mr. Story apparently changed his mind about pleading guilty. As we have previously held, "a change of heart is not sufficient to serve as the basis for a motion to withdraw a plea." State v. Haney, 11th Dist. No. 2006-L-253, 2007-Ohio-3712, at ¶ 19, citing State v. Gomez (Dec. 5, 1997), 11th Dist. No. 97-L-021, 1997 Ohio App. LEXIS 5450, at 9. Moreover, the argument that appellant had a defense to the crimes and that he was confused is tenuous at best.
 {¶ 39} Under these circumstances, we find that the trial court afforded Mr. Story with a full hearing and acted within its discretion in denying appellant's motion to withdraw his guilty plea.
 {¶ 40} Mr. Story's first assignment of error is overruled.
 {¶ 41} Prosecutorial Misconduct
 {¶ 42} In his second assignment of error, Mr. Story argues that the state engaged in prosecutorial misconduct by breaching the terms of the negotiated plea agreement and recommending that Mr. Story receive maximum, consecutive sentences, rather than recommending one year on each count concurrent. This assignment of error is without merit. *Page 10 
 {¶ 43} A plea agreement is contractual in nature. State v.Olivarez (Mar.31, 1999), 11th Dist. No. 97-L-288, 1999 Ohio App. LEXIS 1434, at 8 citing State v. Ford (Feb. 18, 1998), 4th Dist. No. 97 CA 32, 1998 Ohio App. LEXIS 761, at 7. Pursuant to Santobello v. New York
(1971), 404 U.S. 257, a prosecutor has an affirmative obligation to fulfill the terms of a plea agreement in their entirety.
 {¶ 44} As stated previously, the written plea agreement signed by Mr. Story, defense counsel and the assistant prosecutor, did not contain the sentencing recommendations or the express conditions regarding Mr. Story's pleas to charges in other pending cases. This case is distinguishable from Santobello, because here, the prosecutor orally stated that he would recommend one year sentences on each charge on the condition that Mr. Story pled guilty to charges pending in other cases. However, these statements were not made a part of the negotiated plea and therefore the prosecutor did not have an affirmative obligation to recommend one year sentences for each charge. Moreover, the absence of these statements from the written plea agreement should have been addressed at the time Mr. Story signed the plea agreement. Thus there was no contract binding the prosecution to refrain from recommending the trial court impose the maximum sentences for each charge. See State v.Smith, 11th Dist. No. 2004-P-0061, 2005-Ohio-4899, at ¶ 20-25.
 {¶ 45} Even if the sentencing recommendation premised upon Mr. Story's pleading guilty in other pending cases had been included in the written plea agreement, there was no prosecutorial misconduct. As stated previously, a negotiated plea agreement is contractual in nature. It is an axiomatic rule of plea agreements that "[a] defendant's failure to fulfill the terms of a plea agreement will relieve the government of reciprocal obligations under the agreement." State v. Ready, 11th Dist. No. 2001-L-150, *Page 11 
2002-Ohio-7138, at ¶ 51, citing State v. Woyan (July 21, 1997), 4th Dist. No. 96 CA 1772, 1997 Ohio App. LEXIS 3182, at 4. There is no dispute that Mr. Story breached the plea agreement by not pleading guilty to "two out of three drug charges" or the charge of aggravated assault. Therefore, the state was not bound by its sentencing recommendation.
 {¶ 46} Mr. Story's second assignment of error is overruled.
 {¶ 47} Ineffective Assistance of Counsel
 {¶ 48} In his third assignment of error, Mr. Story contends that his trial counsel was ineffective because he failed to object to the prosecutor deviating from the terms of the plea agreement and failed to put on evidence to support his motion to withdraw his guilty plea.[1]
We disagree.
 {¶ 49} In reviewing an ineffective assistance of counsel claim, the standard is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Stickland v. Washington (1984),466 U.S. 668, 686. "To successfully assert ineffective assistance of counsel, [Mr. Story] must show that the attorney made errors so serious that he or she was not functioning as `counsel' as guaranteed by the Sixth Amendment, and [Mr. Story] must show that he or she was prejudiced by the deficient performance." State v. Batich, 11th Dist. No. 2006-A-0031, 2007-Ohio-2305, at ¶ 42.
 {¶ 50} We begin our analysis with the premise that a licensed attorney is presumed to be competent. State v. Patt, 11th Dist. No. 2002-L-073, 2004-Ohio-2601 at ¶ 35, citing State v. Kerns (July 14, 2000), 11th Dist. No. 99-T-0106, 2000 Ohio App. *Page 12 
LEXIS 3202, at 7. Defense counsel's alleged failure to put on evidence in support of Mr. Story's motion to withdraw did not amount to ineffective assistance of counsel. Mr. Story has not demonstrated how this failure prejudiced Mr. Story in anyway, nor is there any evidence of incompetence in the record. Mr. Story's third assignment of error is overruled.
 {¶ 51} The judgment of the Ashtabula County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., TIMOTHY P. CANNON, J., concur.
[1] Our ruling on Mr. Story's second assignment of error makes his first contention regarding his attorney moot. *Page 1